360 F.2d 304
 Fred J. KING, formerly named Fuad J. Kinj, Petitioner,
v.
Nicholas D. KATZENBACH, United States Attorney General, and
C. W. Johnson, District Director of Immigration
and Naturalization, Respondents.
 No. 22380.
 United States Court of Appeals Fifth Circuit.
 April 21, 1966.
 
 Scallan E. Walsh, Jack N. Rogers, Baton Rouge, La., for petitioner.
 John C. Ciolino, Asst. U.S. Atty., Eastern Dist. of La., New Orleans, La., Paul Nejelski, Atty., Dept of Justice, Washington, D.C., Louis C. LaCour, U.S. Atty., Eastern Dist. of La., New Orleans, La., for respondents, Maurice A. Roberts, Atty., Dept. of Justice, Washington, D.C., of counsel.
 Before RIVES and WISDOM, Circuit Judges, and MORGAN, District Judge.
 RIVES, Circuit Judge:
 
 
 1
 This is a petition for review of an order of the Board of Immigration Appeals dismissing petitioner's appeal from an order of a Special Inquiry Officer. Only one question is presented for review: Does petitioner qualify for a second preference immigration visa under Section 203(a)(2) of the Immigration and Nationality Act of 1952, 8 U.S.C.A. 1153(a)(2), as amended September 22, 1959 (73 Stat. 644)? The facts and the posing of that question are correctly stated in the decision of the Board of Immigration Appeals, as follows:
 
 
 2
 'The record relates to a native and citizen of Lebanon, 30 years old, male, who last entered the United States at the port of New York on January 31, 1956. He was then admitted as a nonimmigrant student, authorized to remain in such status until January 5, 1963. The respondent was granted until February 10, 1963, within which to effect voluntary departure but remained thereafter without authority. Deportability on the charge stated in the Order ot Show Cause is established.
 
 
 3
 'The case was previously before us on appeal from an order of the special inquiry officer entered on March 27, 1963, granting voluntary departure with the alternate order that if he failed to depart as required, he be deported to Lebanon. The appeal was dismissed. On August 7, 1964, we ordered proceedings reopened for the purpose of considering the respondent's request for adjustment of status under Section 245 of the Immigration and Nationality Act, as amended, or for such other relief as might be appropriate.
 
 
 4
 'The record shows that the respondent on September 5, 1963, in the Parish of East Baton Rouge, Louisiana, married Shirley Claudia O'Hara Mulligan, a native-born citizen of the United States. On April 19, 1964, at Omaha, Nebraska, the respondent's wife gave birth to a citizen child. The day after the marriage she completed a visa petition to accord the respondent nonquota status. In her sworn statement of April 20, 1964, the wife asked that the visa petition be revoked and on May 19, 1964, the District Director at New Orleans denied the visa petition. On May 29, 1964, the respondent filed a petition for separation a mensa et thoro in the Family Court for the Parish of East Baton Rouge, Louisiana in which respondent asserted under Louisiana law he was the legal father of the child and was awarded the temporary care, custody and control of the minor child (Ex. R-4). (A final decree in this matter was rendered on September 9, 1964). There is some evidence in the file of a sham marriage for the purpose of avoiding deportation. There is also evidence that the respondent is not the natural father of the child (Ex. R-4; Ex. R-6, p. 5; Ex. R-7). However, we need not at this point consider whether the relief of Section 245 of the Act is warranted as a matter of discretion. For the purpose of this discussion we shall also assume without conceding, that under the laws of the State of Louisiana the respondent is recognized as the legal father of the child, Darlene Rachael, born in Nebraska, despite his admission that he is not the biological or natural father of the child and despite the statement by the mother that there was never any intercourse between herself and the respondent.
 
 
 5
 'The critical question in the case is whether the respondent can meet the requirement of Section 245(a)(3) of the Immigration and Nationality Act (8 USC 1255(a)(3)) that an immigrant visa be immediately available to the alien. Section 203(a)(2) of the Immigration and Nationality Act (8 USC 1153(a)(2)) provides: "The next 30 per centum of the quota for each quota area for such year, plus any portion of such quota not required for the issuance of immigrant visas to the classes specified in paragraphs (1) and (3), shall be made available for the issuance of immigrant visas to qualified quota immigrants who are the parents of citizens of the United States, such citizens being at least twenty-one years of age or who are the unmarried sons or daughters of citizens of the United States.' Counsel construes the italicized portion of this section as though the language thereof reads: * * * to qualified quota immigrants who are the parents of citizens of the United States, such citizens being (a) at least twenty-one years of age; or (b) who are the parents of unmarried sons or daughters of citizens of the United States. Counsel argues that inasmuch as the respondent is the parent of a citizen who is the unmarried daughter of his citizen wife, he is therefore entitled to second preference quota status under the statute as he interprets it.'
 
 
 6
 More specifically, the question presented is what subject is modified by the last clause, 'or who are the unmarried sons or daughters of citizens of the United States'? Does that clause modify 'qualified quota immigrants,' or does it modify 'citizens of the United States' as used in the phrase 'parents of citizens of the United States'? The Special Inquiry Officer and the Board of Immigration Appeals held that the last clause of the subsection modifies 'qualified quota immigrants.' The Special Inquiry Officer noted that petitioner's construction does not meet the elementary rule of English grammar that the coordinating conjunction 'or' links two parallel and equal sentence elements.[1]
 
 
 7
 That logical and grammatical construction is required by the legislative history of Section 203(a) of the Act, 8 U.S.C.A. 1153(a). The clause 'who are the unmarried sons or daughters of citizens of the United States' was added to Section 203(a)(2), 8 U.S.C.A. 1153(a)(2), by the amendatory Act of September 22, 1959 (73 Stat. 644). Prior to the adoption of that Act, subsection (4) of Section 203(a), 8 U.S.C.A. 1153(a), granted fourth preference visas to immigrants 'who are the brothers, sisters, sons or daughters of citizens of the United States.' Section 3 of the Act of September 22, 1959 (73 Stat. 644) amended subsection (4) by granting fourth preference visas only to immigrants 'who are the brothers, sisters, married sons or married daughters of citizens of the United States,' thus eliminating unmarried sons and daughters from the fourth preference category.
 
 
 8
 At the same time, Section 1 of the Act of September 22, 1959 (73 Stat. 644) added the clause in controversy to subsection (2), which grants second preference visas to immigrants 'who are the unmarried sons or daughters of citizens of the United States.' The obvious intention of Congress in this amendment to raise unmarried sons and daughters from fourth to second preference is illustrated by S.Rep.No. 962, 86th Cong., 1st Sess., which accompanied H.R. 5896, which became the Act of September 22, 1959 (73 Stat. 644). Senate Report No. 962 states that one purpose of the bill was to 'improve the quota immigrant status of the unmarried sons or daughters, over 21 years of age, of citizens of the United States by moving them from the fourth to the second preference.' The Senate Report also contains a letter from the Department of Justice, which similarly explained that the purpose of the accompanying bill was to raise adult unmarried sons and daughters of United States citizens from the fourth to second preference category. U.S.Code Cong. & Ad. News (1959), p. 2803, et seq.
 
 
 9
 The 1965 amendments to the Immigration and Nationality Act[2] further demonstrate the continued policy of Congress to withhold preference visas from aliens in petitioner's status, namely, a parent of a United States citizen minor. The 1965 amendments create a special nonquota category for 'immediate relatives,' Section 1(a) and (b) amending Section 201 of the Act, 8 U.S.C.A. 1151. These relatives who may enter free of numerical limitation are defined as follows: 'The children, spouses, and parents of a citizen of the United States: Provided, that in the case of parents, such citizens must be at least twenty-one years of age.' The reports of both houses of Congress specifically note that only the parents of adult United States citizens will be permitted to enter without numerical limitation.[3] Petitioner clearly does not qualify as an 'immediate relative' under the new amendment because his alleged daughter is not 'at least twenty-one years of age.'
 
 
 10
 In addition, the leading treaties in this area of the law, Gordon and Rosenfield, Immigration Law and Procedure (1964), at pp. 200-01, notes that before the 1959 amendment second preferences under Section 203(a), 8 U.S.C.A. 1153(a), were limited to parents of United States citizens and comments that 'the latter phase of the second preference classification, added in 1959, deals with the unmarried sons and daughters of American citizens.'
 
 
 11
 In summary, the rules of grammar, the administrative interpretation, the legislative history, and the leading commentators, all without exception, require the affirmance of the finding that the petitioner is statutorily ineligible for a preference under Section 203(a)(2) of the Immigration and Nationality Act of 1952, as amended September 22, 1959 (73 Stat. 644). The final order of deportation under review is therefore affirmed. 8 U.S.C.A. 1105a.
 
 
 12
 Affirmed.
 
 
 
 [1]
 See H. W. Fowler, A Dictionary of Modern English Usage (1940), p. 603; Porter Perrin, Writer's Guide and Index to English (1942), p. 464
 
 
 [2]
 P.L. 89-236, 79 Stat. 911, 89th Cong., H.R. 2580
 
 
 [3]
 S.Rep. 748, p. 13, and H.Rep. 745, pp. 12, 18, 89th Cong., 1st Sess